# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 17, 2022

Lyle W. Cayce
Clerk

---

No. 22-30055

---

Plaquemines Parish,

*Plaintiff—Appellee*,

State of Louisiana, *ex rel*. Jeff Landry, *Attorney General*; State of Louisiana, *through* The Louisiana Department of Natural Resources Office of Coastal Management and its Secretary, Thomas F. Harris,

*Intervenors—Appellees*,

*versus*

Chevron USA, Incorporated, *as successor in interest to* Chevron Oil Company and The California Company; Exxon Mobil Corporation, *as successor in interest to* Exxon Corporation and Humble Oil and Refining Company; ConocoPhillips Company, *as successor in interest to* General American Oil Company of Texas,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-5217

---

Before Stewart, Elrod, and Graves, *Circuit Judges*.

Per Curiam:*

This case stems from the federal government's relationship with the oil industry during World War II. The question presented on this appeal is whether this case was properly removed to federal court under the federal officer removal statute. More specifically, the parties disagree on whether defendants Oil Producers were "acting under" federal officers when they ramped up wartime oil production such that they can now remove this case from state court. 28 U.S.C. § 1442(a)(1). The district court ruled against Producers and ordered the case to be remanded to state court. Because we find no reversible error by the district court, we AFFIRM.

I.

Appellee Plaquemines initially brought this case in Louisiana state court, alleging violations of the Louisiana's State and Local Coastal Resources Management Act. That Act, which became effective in 1980, required parties seeking to use coastal areas (*e.g.*, for natural resource extraction) to obtain and comply with "coastal use permit[s]." La. Stat. § 49:214.30(A)(1). The Act grandfathered coastal uses that were "legally commenced or established prior to the effective date of the coastal use permit program." *Id.* § 49:214.34(C)(2). Plaquemines alleged that Producers' operations, which date back to the 1940s, "were *not* 'lawfully commenced or established'" before 1980 because, given various alleged "depart[ures] from prudent industry practices," they were not begun "in good faith." Thus, in Plaquemines's view, Producers' extant operations were not grandfathered in, so they can be held liable under the Act for environmental damages resulting from permit violations from 1980 onward. *See Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362 (5th Cir. 2021).

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

Producers removed the suit from Louisiana state court to the federal district court under § 1442. On their telling, the history of the federal government's oversight, conscription, and vertical integration of the oil industry during World War II justified federal jurisdiction because Producers "act[ed] under" federal officers in increasing output to help (literally) fuel the war effort. 28 U.S.C. § 1442(a)(1). They also noted that they served as federal contractors or subcontractors to refineries with government contracts during the War. And for that reason, they were contractually "directed" by federal officers to perform the actions for which they are now being sued.

The district court rejected Producers' theories. It found no federal contract or subcontract in the record, and it refused to infer the existence of any subcontracts on the basis of Producers' buyer-supplier relationships with government-contracted refineries. The district court also rejected Producers' argument that, even absent a contract, they had a "special relationship" with the federal government and were thus subject to federal-officer direction during WWII. Having rejected all of Producers' "acting under" theories, the district court ordered the case to be remanded back to state court. 28 U.S.C. § 1442(a)(1). Producers timely appealed. *See* 28 U.S.C. § 1447(d) (authorizing appeals of remand orders premised on lack of federal-officer jurisdiction).

## II.

"This court reviews *de novo* an order remanding a case removed under the federal officer removal statute." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 450 (5th Cir. 2021). "The district court's factual determinations made in the process of determining jurisdiction are reviewed for clear error." *U.S. Fire Ins. Co. v. Villegas*, 242 F.3d 279, 283 (5th Cir. 2001).

III.

The federal officer removal statute provides that "any officer (or any person *acting under* that officer)" may remove to federal court "a civil action . . . commenced in a State court" when the claims are "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). Under this statute, "[t]he removing defendant has the burden of showing: '(1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's [or agency's] directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions.'" *Box v. PetroTel, Inc.*, 33 F.4th 195, 199 (5th Cir. 2022) (quoting *Latiolais*, 951 F.3d at 296); *see also Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."). The first and second prongs are not at issue. The main dispute in this case concerns the third prong—whether Producers "acted pursuant to a federal officer's [or agency's] directions." *Id.* Because we hold that Producers fail to satisfy the third prong, we need not reach the fourth.

There is no removal jurisdiction in this case because Producers did not "act[] pursuant to a federal officer's [or agency's] directions." *PetroTel*, 33 F.4th at 199. The Supreme Court has held that removal jurisdiction under § 1442(a)(1) is available "'only' if the private parties were 'authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law.'" *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 143 (quoting *City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 824 (1966)). Such relationships are often evidenced by governmental contracts, but evidence of "any payment, any employer/employee relationship, or any principal/agent arrangement" can also indicate the requisite "delegation of legal authority" to act "on the Government['s] behalf." *Watson*, 551 U.S. at 156. We hold

that Producers are not entitled to removal under § 1442 because (1) there is insufficient "evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement" indicating that the oil companies acted under a federal officer's or agency's directions; and (2) we find Producers' alternative theories on this issue unpersuasive. *Id.*

Producers present two main theories to explain how they "act[ed] pursuant to a federal officer's [or agency's] directions." *PetroTel*, 33 F.4th at 199. First, they contend that historical accounts show that they had an "unusually close and special relationship" with the federal government during the War. Second, they argue that because they were essential "suppl[iers]" for refineries that "were contractually obligated to deliver to the government," they were thereby "subcontractors"—and government subcontractors have been held to "act[] under" federal officers within the meaning of § 1442(a)(1).

A.

Producers note that they had an "unusually close and special relationship with the government," which supports their contention that they were acting under the federal government's direction. They support this assertion mainly through a lengthy historical account showing that there was an "unprecedented level of control over oil production" and an "unprecedented industry-wide . . . cooperation with the [federal agencies]." For example, Producers note that during this time, the federal government regulated the use of critical materials like steel and rubber in oil production to preserve such materials for the battlefront. *See* Preference Rating Order P-98b, 7 Fed. Reg. 7309 (Sept. 17, 1942). Producers were restricted to only one well per 40 acres to conserve steel (although an agency could grant spacing exceptions when "necessary and appropriate . . . to promote the war

effort"). Conservation Order M-68, 67 Fed. Reg. at 6687 (Dec. 24, 1941). On Producers' historical telling, spurred by temporary wartime government agencies, the oil industry vertically integrated itself into a well-oiled machine and tremendously expanded production, transport, and refinement to meet military and domestic wartime needs. These historical events, Producers say, evince an "unusually close" and "special relationship" between industry and government, oriented towards "assist[ing]" the government in "produc[ing] an item that it needs."

But merely being subject to federal regulations is not enough to bring a private action within § 1442(a)(1). For an entity to be "acting under a federal officer or agency," the action "must involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Watson*, 551 U.S. at 151–52. And "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.* at 152. Furthermore, we have held that being "subject to pervasive federal regulation alone is not sufficient to confer federal jurisdiction," even when there was "cooperation" between "[the private actor] and the federal government." *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 235 (5th Cir. 2022). Thus, to the extent that Producers contend that they were "acting under" a federal officer because they complied with federal regulations or cooperated with federal agencies, we find those arguments unpersuasive. 28 U.S.C. § 1442(a)(1).

B.

Second, Producers argue that because they were obliged, as federal subcontractors, to prioritize fulfillment of orders going towards governmental "Defense Order[s]," they functionally acted under federal officers in delivering oil to the refineries that made war products for the government. Priorities Regulation No. 1, 6 Fed. Reg. 6680 (Dec. 4, 1941),

§944.1(b)(4). Producers first note that they supplied government-contracted refineries with crude oil, which were critical raw materials. And because Producers supplied a necessary material for the refineries' government contracts, they contend that they were federal subcontractors. As federal subcontractors, Producers contended that they "act[ed] under" federal officers and may remove to federal court under § 1442.

The district court observed that there was "no document evidencing such a subcontract" on the record and rejected the argument that "supplier relationships suffice to create subcontractor relationships." *Par. of Plaquemines v. Riverwood Prod. Co.*, No. CV 18-5217, 2022 WL 101401, at *8 (E.D. La. Jan. 11, 2022). And even assuming *arguendo* that Producers were subcontractors, their mere status as subcontractors would not help establish that they "act[ed] under" a federal officer's directions. 28 U.S.C. § 1442(a)(1). In fact, Producers' own cited authority suggests that subcontractors need to indicate how they themselves were "subject to the federal government's guidance and control" to remove under § 1442. *Cnty. Board v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253 (4th Cir. 2021); *see also id.* at 251 (noting that the "'acting under' relationship requires that there at least be some exertion of 'subjection, guidance, or control' on the part of the federal government'" (quoting *Mayor & City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452 (4th Cir. 2020) (in turn quoting *Watson*, 551 U.S. at 151.), *cert. granted*, 141 S. Ct. 222 (2020), and *vacated and remanded on other grounds*, 141 S. Ct. 1532 (2021))).

Here, Producers have not shown that they were subjected to the federal government's guidance or control as subcontractors. *Cf. Express Scripts Pharmacy,* 996 F.3d at 253 (holding that a subcontractor was entitled to removal because "[t]he [governmental] contract not only contemplated the use of subcontractors; it also made them directly accountable to the federal government"). As the district court noted, the "refineries, who had

federal contracts and acted pursuant to those contracts, can likely remove [under § 1442], but that does not extend to [parties] not under that contractual direction." *Plaquemines*, 2022 WL 101401, at *7. Because Producers' arguments fail to convince us otherwise, we reject the contention that they "act[ed] pursuant to a federal officer's directions," *PetroTel*, 33 F.4th at 199, or otherwise "act[ed] under" a federal officer's directions as subcontractors, 28 U.S.C. § 1442(a)(1).

* * *

Accordingly, we AFFIRM the district court's order granting the motion to remand.